UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-58-GWU

TONYA LEWIS, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Tonya Lewis originally filed <u>Combs v. Barnhart</u>, Pikeville Civ. A. No. 02-369, to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income.[1]  After a period of administrative reconsideration prompted by the court's Memorandum Opinion, Order, and Judgment of January 7, 2004 (Tr. 953-961), the case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); <u>Crouch v. Secretary of Health and Human Services</u>, 909 F.2d 852, 855 (6th

---

[1] Combs changed her last name to Lewis following the remand of the action.

1

Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under

certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott

v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Lewis, a 31-year-old former cashier with a high school education, suffered from impairments related to chronic neck and back pain secondary to degenerative disc disease with bulges in the lumbar and cervical spine, post-traumatic arthritis, decreased range of motion in the left shoulder, gastroesophageal reflux disease, obesity, angina-like symptoms, a major depressive disorder, and post-traumatic stress disorder.  (Tr. 595, 598).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr.


600).  Since the claimant was found to be able to return to her past relevant work, she could not be considered totally disabled.  (Tr. 602).

Lewis filed an earlier application for DIB which resulted in a finding of a closed period of disability from December 3, 1997 through April 10, 1999. (Tr. 596). While the current application was pending, the plaintiff also filed another DIB application which resulted in a finding of disabled status as of September 26, 2001. (Id.).  Therefore, the time frame pertinent to the current claim before the court is the unadjudicated time period between April 11, 1999 and September 25, 2001.  (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

This action was previously remanded by the undersigned because the ALJ erred in dealing with the opinion of Dr. Moujahed Achtar, a treating physician.  (Tr. 960).  Dr. Achtar completed a residual functional capacity assessment form upon which he identified a number of very severe mental and physical limitations.  (Tr. 366-368).  Despite these numerous limitations, the ALJ failed to address why he was rejecting these treating source restrictions.  (Tr. 22-31).  The administrative regulations at 20 C.F.R. § 404.1527(d)(2) provide that an ALJ must state the reasons for rejecting the opinion of a treating source.  The Sixth Circuit Court of Appeals has recently held that the failure of the agency to follow its own procedural

07-58 Tonya Lewis

rules can constitute reversible error. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). Upon remand, the problem has been cured.

The ALJ noted a number of reasons to reject Dr. Achtar's restrictions. With regard to Lewis's physical condition, the ALJ noted that Dr. Achtar imposed restrictions on hearing, seeing and speaking, yet the record revealed no objective findings supporting such limitations and the plaintiff demonstrated no limitation in these areas at the administrative hearing. (Tr. 599). The ALJ noted that progress notes from the Mountain Comprehensive Health Corporation (MCHC), of which Dr. Achtar was an associate, repeatedly noted no muscle weakness or sensory deficits. (Tr. 302, 310, 328, 375, 413, 488, 599). The court notes that x-rays of the right hip and pelvis at MCHC were normal. (Tr. 460, 463). An x-ray of the lumbar spine showed only narrowing of the disc space at L4-L5 and L5-S1. (Tr. 463). The ALJ noted that an x-ray of the lumbar spine obtained by Dr. Stephen Nutter, an examining consultant, was negative. (Tr. 436, 599). Dr. Nutter reported normal muscle strength and tone upon physical examination. (Tr. 440). With regard to the claimant's mental status, ALJ noted that treatment records from the Comprehensive Care Center, her treating mental health source, revealed a Global Assessment of Functioning (GAF) in the mild range.[2] (Tr. 599). Dr. Achtar's mental restrictions

---

[2]The Comprehensive Care Center staff rated the plaintiff's GAF at 61 to 70. (Tr. 432). The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34, indicates that such a GAF indicates the

6

were also said to be inconsistent with those of Psychologist William Rigby, an examining consultant. (Id.). Therefore, under these circumstances, the ALJ could reject as binding Dr. Achtar's mental and physical limitations.

The residual functional capacity found by the ALJ included an exertional limitation to light level work restricted from a full range by (1) an inability to lift more than 10 pounds with the left hand and arm; (2) the need for a sit/stand option in one-hour intervals; (3) an inability to work overhead with her hands; (4) a restricted ability to reach, grasp, push and pull with the left arm; (5) an inability to more than occasionally bend, twist, stoop, or kneel; (6) an inability to ever crawl, climb, crouch or balance; (7) a need to avoid exposure to dust, gases, fumes, temperature extremes and excess humidity, working at heights, or exposure to moving machinery and vibrations; (8) a limitation to low stress entry level work requiring only simple one-two-three step procedures without frequent changes in work routines and (9) a limitation concerning interaction with the general public. (Tr. 602). Substantial evidence supports this finding.

Dr. Charles Rutledge examined Lewis and diagnosed low back strain and left shoulder strain. (Tr. 234). Dr. Rutledge indicated that the plaintiff would be restricted to lifting 50 pounds and 25 pounds occasionally. (Tr. 237). Climbing, balancing, stooping crouching, kneeling, and crawling were all restricted to

---

existence of only "mild" psychological symptoms.

7

occasional performance. (Tr. 238). Pushing and pulling was noted to be slightly limited. (Tr. 239). The ALJ's findings were consistent with this opinion. Dr. Nutter, another examiner, was unable to rate the plaintiff's ability to lift and carry. (Tr. 443). However, the doctor indicated that the claimant would be limited to occasionally climbing, balancing, crawling and stooping. (Tr. 444). She would not be able to ever crouch. (Id.). Reaching was restricted. (Tr. 445). Finally, the plaintiff would need to avoid exposure to vibration and hazards. (Tr. 446). The ALJ's findings were essentially consistent with this opinion as well. Modest restrictions limiting the claimant to a restricted range of medium level work were reported by Dr. Kenneth Phillips (Tr. 315-322) and Dr. Calixto Hernandez (Tr. 336-344), the non-examining medical reviewers, and the ALJ's findings were compatible with these opinions also. Following remand of the action, the record was also reviewed by Dr. David Swan who noted that the claimant would be limited to a restricted range of light level work.[3] (Tr. 779-789). The ALJ's findings were consistent with this opinion as well. These reports provide substantial evidence to support the administrative decision with regard to the plaintiff's physical condition.

Dr. Edward Escobar, another consultative examiner, identified physical restrictions which were close to those found by the ALJ. (Tr. 349-351). However,

---

[3] Dr. Swan did impose a two-hour limitation concerning total standing which would arguably be accommodated by the hypothetical question's sit/stand option. (Tr. 781).

the doctor did report that Lewis would need a sit/stand option in 30-minute intervals rather than the one-hour time period found by the ALJ.  Thus, this report does not fully support the administrative decision.  As a one-time examiner, Dr. Escobar's opinion was not entitled to controlling weight and was offset by the other examiners.

With regard to Lewis' mental status, Psychologist William Rigby examined her and diagnosed dysthymia.  (Tr. 454).  Rigby indicated that the plaintiff would have a "fair" ability, defined as "ability to function in this area is satisfactory," in such areas as dealing with work stresses and understanding, remembering and carrying out complex instructions.  (Tr. 455-456).  The hypothetical factors were compatible with this opinion.  Dr. Robert Eardley examined the claimant following the remand and diagnosed an anxiety/depressive disorder. (Tr. 762). Dr. Eardley indicated that Lewis was able to make social and personal adjustments and that occupational issues would relate to her physical rather than mental problems.  (Tr. 763).  As previously noted, the plaintiff's GAF, as rated at the Comprehensive Care Center, indicated only "mild" psychological symptoms and, so, the ALJ's findings are also consistent with it.  (Tr. 431-433).  Psychologist Edward Stodola (Tr. 417, 792) reviewed the record both before and after the remand and opined on two different occasions that it did not reveal the existence of a "severe" mental impairment.  These reports all provide substantial evidence to support the ALJ's assessment of the claimant's mental status.

07-58   Tonya Lewis

In determining that Lewis could return to her past work as a cashier, the ALJ relied heavily upon the information provided by Vocational Expert Ralph Crystal. (Tr. 600-601). The ALJ presented to Crystal all of the physical and mental restrictions found in the ALJ's aforementioned residual functional capacity assessment. (Tr. 571-572). In response, the witness indicated that the plaintiff's past cashier work could still be performed. (Tr. 572). Since the job had only been held by the claimant for two months, the vocational expert was concerned that this position might not constitute substantial gainful activity. (Id.). Due to these concerns, Crystal cited other jobs which could still be performed under the terms of the hypothetical question. (Tr. 572-573). Thus, this testimony provides strong support for the administrative decision.

Lewis argues that the ALJ erred in relying upon the testimony of Crystal. Crystal testified at the hearing on August 27, 2001, when this action was initially before the ALJ. The plaintiff asserts that the ALJ needed to obtain new vocational testimony following the remand. The court in the remand decision suggested that the ALJ's residual functional capacity assessment at that time might not be well-supported with regard to the claimant's physical condition. (Tr. 960-961). However, the undersigned unfortunately overlooked the opinion of Dr. Rutledge. When his opinion is considered, substantial evidence supports the administrative decision. The reason for the prior remand was the ALJ's failure to address Dr. Achtar's

07-58  Tonya Lewis

opinion and not his residual functional capacity assessment.  Therefore, the ALJ could properly rely upon the earlier testimony.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 11th day of June, 2008.

Signed By:

G. Wix Unthank

United States Senior Judge